IN THE UNITED STATES BANKRUPTCY COURT **FILED**

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

Samuel L. Kay, Clerk
United States Bankruptcy Court
Savannah, Georgia
*By cking at 4:43 pm, Apr 27, 2010*

| | |
|---|---|
| IN RE: | Chapter 11 Case |
| | Number 08-12573 |
| WESTFIELDS APARTMENTS, LLC | |
| Debtor in Possession | |

| |
|---|
| GEORGIA HERITAGE ASSOCIATES, LP |
| Objecting Party |
| in Interest |
| v. |
| WESTFIELDS APARTMENTS, LLC |
| Debtor in Possession |

## ORDER SUSTAINING OBJECTION TO CONFIRMATION

This matter comes before me on Confirmation of Plan of Reorganization with objection filed by Georgia Heritage Associates, LP ("Georgia Heritage"). The chapter 11 plan filed by Debtor in Possession Westfields Apartments, LLC ("Debtor") proposes to assume a sales contract ("Sales Contract") under which the Debtor was to purchase an apartment complex from Georgia Heritage. In the alternative, the plan proposes to pay creditors from funds currently held in the registry of this Court. Because the Sales Contract expired by its own terms and the funds are not property of the Debtor's estate, the Debtor's

AO 72A

(Rev. 8/82)

proposed plan does not satisfy the requirements for confirmation under 11 U.S.C. § 1129. The objection is sustained.

## BACKGROUND

### I. The Sales Contract.

On October 12, 2006, the Debtor and Georgia Heritage entered into the Sales Contract under which the Debtor was to purchase a 188-unit apartment complex in Augusta, Georgia, from Georgia Heritage for $4,400,000. (Case Dkt. No. 35 at 11.)[1] The original closing date was to occur between January 16, 2007, and March 1, 2007 (id.), and the Sales Contract stated that "[t]ime is of the essence" (id. at 15, ¶ 13). The following provisions of the Sales Contract are relevant to the issue before me:[2]

> 2. **Earnest Money:** Purchaser shall deposit $100,000.00 (the "Earnest Money") with Lawyer's Title Insurance Company which shall be applied to the Purchase Price at closing.

> 3. **Closing Date:** The sale shall be closed at a time and place mutually acceptable to both parties between January 16, 2007 and March 1, 2007 within a reasonable time following the receipt of all judicial and other government approvals associated with Purchaser's tax exempt bond financing as more particularly described in paragraph 11. Possession of the Property shall be delivered to Purchaser on the day of closing.

---

[1] References to the chapter 11 case docket appear in the following format: "Case Dkt. No. ___." References to the docket in the related adversary proceeding (No. 09-01015) appear in the following format: "A.P. Dkt. No. ___."

[2] The Sales Contract refers to the Debtor as "Purchaser" and Georgia Heritage as "Seller."

2

> 11. **Financing:** This Sales Contract is contingent upon
> the Augusta Housing Authority issuing $8,500,000.00 in
> tax exempt revenue bonds and loaning the proceeds
> thereof to Purchaser for use in purchasing and
> rehabilitating the Property. This bond issue will be
> underwritten by Bergen Capital, Inc. The terms must
> include an interest rate of not more than 7.4% and a 30
> year amortization schedule. In addition, Purchaser
> must receive 4% low income housing tax credits from the
> Georgia Department of Community Affairs. If Purchaser
> is unable to obtain the bond financing and low income
> housing tax credits on the terms set forth herein, at
> its option, Purchaser may terminate this Sales
> Contract. If Purchaser terminates this Sales Contract
> on or before January 16, 2007, the Earnest Money shall
> be returned to Purchaser and the parties shall have no
> further rights or obligations hereunder. If Purchaser
> terminates this Sales Contract on or after January 17,
> 2007, Seller shall keep the Earnest Money and the
> parties shall have no further obligations hereunder.

(Id. at 11-15.)

The Sales Contract was subsequently modified eight different times by eight separate addenda between January 16, 2007 and August 15, 2008. (See A.P. Dkt. Nos. 39, 39-1.) The primary purposes of the addenda were to extend the closing date of the Sales Contract while the Debtor sought the financing necessary to complete the purchase. "Time is of the essence" provision remained in effect, unaltered by such extensions. The addenda modified the provisions of the Sales Contract as follows.

Paragraph 2 was "temporarily suspended pending the [Debtor's] ability to obtain the necessary financing" by the Second Addendum to Sales Contract. (A.P. Dkt. No. 39-1 at 5.) Paragraph 3 was "supersede[d] and replace[d]" by paragraph 11 in

3

the Third Addendum to Sales Contract. (Id. at 2.) Neither paragraph was reinstated by any later addendum.

Paragraph 11 was modified by each of the eight addenda. With the eighth and final addendum, paragraph 11 read as follows:

> 11. **Financing:** This Sales Contract is contingent upon the Augusta Housing Authority issuing $8,500,000.00 in tax exempt revenue bonds and loaning the proceeds thereof to Purchaser for use in purchasing and rehabilitating the Property. This bond issue will be underwritten by Bergen Capital, Inc. The terms must include an interest rate of not more than 7.4% and a 30 year amortization schedule. In addition, Purchaser must receive 4% low income housing tax credits from the Georgia Department of Community Affairs. If Purchaser is unable to obtain the bond financing and low income housing tax credits on the terms set forth herein, at its option, Purchaser may terminate this Sales Contract. Purchaser may extend the Sales Contract for three, consecutive 30 day periods between February 19 and May 21, 2007, upon the deposit of $25,000 non-refundable earnest money with Blanchard & Calhoun Real Estate Co. at the beginning of each 30 day period. On or before October 15, 2008, Purchaser shall either give Seller written notice of his [sic] election to terminate this agreement, in which event the $175,000 in nonrefundable deposits shall be paid over to Seller and neither party shall have any further obligation under the Sales Contract, or Purchaser shall commit to close the purchase of the Property on or before November 15, 2008. If Purchaser fails to close the Purchase on or before November 15, 2008, then this Contract shall be terminated and the $175,000 in nonrefundable deposits shall be turned over to Seller.

(See A.P. Dkt. Nos. 39, 39-1.) Of particular import to the matter before me, the final sentence of amended paragraph 11 states that the Sales Contract would be "terminated" if the sale did not close by November 15, 2008. (Dkt. No. 39 at 19.)

AO 72A

(Rev. 8/82)

Also of relevance, the Second Addendum to Sales Contract stated that "the Parties agreed to terminate the Escrow Agreement" and to "instruct the escrow agent to release the $100,000 earnest money deposit." (A.P. Dkt. No. 39-1 at 4.) The Second Addendum also stated that the Debtor had already made two $25,000 deposits of "non-refundable earnest money" with sales broker Blanchard & Calhoun Real Estate Company ("B&C") (id.) and allowed the Debtor to extend the time for closing by depositing an additional $25,000 (id. at 5). The Debtor later made that deposit. (Id. at 1.) The Debtor made four further deposits of $25,000 pursuant to the third, fourth, sixth, and seventh addenda to the Sales Contract, with the deposited money classified as "non-refundable earnest money" in each instance. (A.P. Dkt. No. 39-1 at 1; A.P. Dkt. No. 39 at 29, 23, 21.) As of August 15, 2008, the date upon which the parties signed the Eighth Addendum to Sales Contract, B&C was holding $175,000 as "nonrefundable deposits" ("Funds"). (A.P. Dkt. No. 39 at 19.)

On November 14, 2008, one day before the final amended closing date of the Sales Contract, the Debtor filed a voluntary small business chapter 11 bankruptcy petition. (See Case Dkt. No. 1.) The Sales Contract was the only asset listed in the Debtor's schedules (see Case Dkt. Nos. 11, 18), with a stated value of $325,000.00 (Case Dkt. No. 18 at 2). Only five creditors are listed in the Debtor's schedules, with all five

5

holding unsecured nonpriority claims totaling $312,018.11. (See Case Dkt. No. 19 at 1-2.)

On March 10, 2009, the Debtor filed a complaint initiating an adversary proceeding, naming Georgia Heritage as a defendant. (See A.P. Dkt. No. 1.) The complaint sought, among other things, specific performance of the Sales Contract which adversary proceeding remains pending. (Id. at 9.)

## II. The Chapter 11 Plan.

On February 12, 2010, the Debtor filed its chapter 11 plan and disclosure statement. (See Case Dkt. Nos. 63, 64.)[3] The Debtor's chapter 11 plan proposes primarily to assume the Sales Contract. The plan states that assumption of the Sales Contract will enable it to pay all creditors in full except for one (Case Dkt. No. 69 at 1), which is described as a related entity (id. at 3). In addition, Georgia Heritage is to be paid $200,000 "over and above the [Sales Contract] price." (Id.)

In the alternative, if the Sales Contract cannot be assumed, the plan calls for the distribution of the Funds to pay administrative and unsecured claims. (Id.) Absent assumption of the Sales Contract, the plan proposes to pay nothing to Georgia Heritage. (Id.) All five creditors voted to accept the proposed

---

[3] The Debtor's plan was later amended to correct a typographical error and the omission of an effective date. (See Dkt. No. 69.)

AO 72A

(Rev. 8/82)

plan (see Case Dkt. Nos. 71, 75, 76, 77, 79), while Georgia Heritage cast the only vote to reject it (see Case Dkt. No. 78).[4]

On February 22, 2010, Georgia Heritage objected to confirmation of the Debtor's plan. (See Case Dkt. No. 68.) A hearing on confirmation of the Debtor's plan with Georgia Heritage's objection was held on March 16, 2010. At the close of hearing I took the matter under advisement.

## DISCUSSION

A debtor's chapter 11 plan must fulfill the sixteen requirements of 11 U.S.C. § 1129 in order to be confirmed. One of those requirements is that the plan "compl[y] with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(1).

Two provisions of the Bankruptcy Code are implicated by the Debtor's proposed plan. First, because the Debtor's plan proposes to assume the Sales Contract, the Sales Contract must be capable of assumption under § 365. Second, if assumption is not possible, the Debtor's plan proposes the distribution of the

---

[4] Georgia Heritage was originally listed as an unsecured creditor in the Debtor's schedules (Case Dkt. No. 1 at 9), but was removed as a creditor by a later amendment to those schedules (see Case Dkt. No. 19). Georgia Heritage is, however, a party in interest by virtue of its status as a party to the Sales Contract that the Debtor seeks to assume, and Georgia Heritage characterizes itself as such. While Georgia Heritage's ballot was improper, its objection to confirmation of the Debtor's plan was not.

AO 72A
(Rev. 8/82)

Funds to satisfy the claims of unsecured creditors, meaning those Funds must be property of the estate as defined in § 541.

## I. The Sales Contract Cannot Be Assumed Because It Has Expired by Its Own Terms.

A debtor in possession in a chapter 11 case may "assume or reject any executory contract" to which it is a party.   11 U.S.C. § 365(a).[5]   Although the term "executory contract" is not defined in the Bankruptcy Code, the legislative history of § 365 incorporates the "Countryman definition," which "generally includes contracts on which performance remains due to some extent on both sides."   H.R. Rep. No. 95-595, at 347 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6303; S. Rep. No. 95-989, at 58 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787, 5844.   The Eleventh Circuit Court of Appeals has also used the "functional approach" to determining whether a contract is executory.   Under that approach, "the question of whether a contract is executory is determined by the benefits that assumption or rejection would produce for the estate."   Sipes v. Atl. Gulf Cmtys. Corp. (In re Gen. Dev. Corp.), 84 F.3d 1364, 1375 (11th Cir. 1996).

Even if a contract is executory at the time of the bankruptcy filing, the right to assume that contract under § 365 is extinguished if the contract expires by its own terms or

---

[5] Although § 365(a) grants the power to assume or reject an executory contract to the trustee, a debtor in possession is granted that same power pursuant to § 1107(a).

8

otherwise ceases to exist.  Counties Contracting & Constr. Co. v.
Constitution Life Ins. Co., 855 F.2d 1054, 1061 (3rd Cir. 1988)
(life insurance policy that expired postpetition could not be
assumed); In re Balco Equities Ltd., Inc., 312 B.R. 734, 750
(Bankr. S.D.N.Y. 2004) (forbearance agreement to avoid
foreclosure proceedings that expired postpetition could not be
assumed); Camp v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.
(In re Gov't Sec. Corp.), 101 B.R. 343, 349-50 (Bankr. S.D. Fla.
1989) (termination of insurance contract by its own terms
postpetition rendered motion to assume the contract moot);
Lauderdale Motorcar Corp. v. Rolls-Royce Motors, Inc. (In re
Lauderdale Motorcar Corp.), 35 B.R. 544, 548-49 (Bankr. S.D. Fla.
1983) (automobile dealership agreement that expired by its own
terms postpetition could not be assumed); see also Texscan Corp.
v. Commercial Union Ins. Cos. (In re Texscan Corp.), 107 B.R.
227, 230 (B.A.P. 9th Cir. 1989) ("It is axiomatic that before 11
U.S.C. § 365 can apply a contract must exist.  If a contract has
expired by its own terms then there is nothing left to assume or
reject.").

The Debtor's chapter 11 plan improperly proposes to assume
the Sales Contract after it expired by its own terms.  Paragraph
11 of the Sales Contract, as amended by the Eight Addendum,
states that "[i]f [the Debtor] fails to close the Purchase on or
before November 15, 2008, then this Contract shall be terminated

. . . ." (Dkt. No. 39 at 19 (emphasis added).) The Sales Contract was not closed on or before November 15, 2008, and it terminated (or expired) by its own terms.

The Debtor could have filed a motion to assume the Sales Contract on either November 14, 2008—the petition date—or November 15, 2008—the last day on which the Debtor could close on the Sales Contract. By not taking such action, the Debtor allowed the Sales Contract to terminate. See Aetna Cas. & Sur. Co. v. Gamel, 45 B.R. 345, 349 (Bankr. N.D.N.Y. 1984) ("To prevent the [contractual] relationship from terminating, some affirmative action on the part of the debtor was needed.").

The Debtor's attempt to assume the Sales Contract through its proposed chapter 11 plan is apparently premised on the mistaken belief that its bankruptcy filing "stay[ed] the expiration of the contract." (A.P. Dkt. No. 29 at 5.) While it is true that a debtor can typically propose the assumption of a contract "at any time before the confirmation of a plan" in a chapter 11 case, 11 U.S.C. § 365(d)(2), the contract must still exist or the right to assumption is extinguished, Counties Contracting, 855 F.2d at 1061.

By the time the Debtor finally proposed assumption of the Sales Contract as part of its chapter 11 plan in February 2010, that assumption was not possible because the Sales Contact no longer existed. See Counties Contracting, 855 F.2d at 1061.

10

AO 72A
(Rev. 8/82)

Therefore, because the Debtor's chapter 11 plan proposes to assume the Sales Contract which cannot be assumed under § 365, the plan does not comply with the applicable provisions of the Bankruptcy Code as required by § 1129(a)(1).

## II. The Funds Are Not Property of the Debtor's Estate and Therefore Cannot Be Distributed to Unsecured Creditors.

Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The extent and validity of a debtor's interest in property is determined by state law. Dzikowski v. NASD Regulation, Inc. (In re Scanlon), 239 F.3d 1195, 1197 (11th Cir. 2001).

Under Georgia law, depositing earnest money with a sales broker for distribution at some later time as set forth in a sales contract creates an escrow agency in the sales broker. McGinley v. Chappas, 85 S.E.2d 791, 792 (Ga. Ct. App. 1955). Once earnest money is placed in escrow, it is no longer under the depositor's control. Ahmed v. CUA Autofinder, LLC (In re CUA Autofinder, LLC), 387 B.R. 906, 910 (Bankr. M.D. Ga. 2008) (citing Collins v. Norton, 220 S.E.2d 279, 280 (Ga. Ct. App. 1975)). Title, however, remains in the depositor until all of the conditions of the escrow agreement have been fulfilled. Collins, 220 S.E.2d at 281.

11

"[F]unds that are deposited into an escrow account by a debtor, for the benefit of others, cannot be characterized as property of the estate." In re Scanlon, 239 F.3d at 1198.[6]   In Scanlon, the debtor's funds were placed in an escrow account to be paid to victims of the debtor's securities violations. Id. at 1196.   The Eleventh Circuit Court of Appeals held that even if the debtor was the legal owner of the funds, because the funds were beyond the debtor's control and could only be paid to the victims, the funds were not property of the estate. Id. at 1199.

In the present case, the Funds deposited with B&C are not property of the estate.   The Funds were deposited by the Debtor with a sales broker—B&C—and were to be distributed in accordance with the Sales Contract, creating an escrow under Georgia law. See McGinley, 85 S.E.2d at 792.   Although the Debtor held title to the Funds as of the petition date, see Collins, 220 S.E.2d at 281, there were no circumstances under which the Debtor was entitled to distribution of the Funds under the Sales Contract; the Funds were to be paid over to Georgia Heritage regardless of

---

[6] Although the Eleventh Circuit was interpreting Florida law in Scanlon, Georgia law is identical on the subject of title to funds that are placed in escrow.   Compare In re Scanlon, 239 F.3d at 1197-98 ("[Under Florida law,] legal title to property placed in an escrow account remains with the grantor until the occurrence of the condition specified in the escrow agreement.") with Collins, 220 S.E.2d at 281 ("[Title to property in escrow] remains in the depositor who surrenders his property to the third party, until all conditions of the escrow are accomplished . . . ."). Thus, the Eleventh Circuit's analysis in Scanlon is applicable to the present case.

12

whether the Sales Contract closed.[7] As of the petition date, November 14, 2008, the Funds would either be transferred to Georgia Heritage as part of the purchase price if the Debtor closed on the purchase, or they would have been paid to Georgia Heritage as "nonrefundable deposits" upon termination of the Sales Contract on November 15, 2008. (See Case Dkt. No. 35 at 21.) Therefore, because the Funds were outside of the Debtor's control and could have been distributed only to Georgia Heritage under the Sales Contract, the Funds are not property of the estate under § 541. See In re Scanlon, 239 F.3d at 1199.[8]

---

[7] This fact distinguishes the present case from the three cases cited by the Debtor in support of its argument that the Funds are property of the estate. (See A.P. Dkt. No. 29 at 6-7.) In each of those cases, the debtor had a right to the return of the funds in escrow if certain conditions were met. See In re Johnson, 379 B.R. 150, 163 (Bankr. N.D. Ill. 2007) (sales contract provided for payment of escrow to trustee on buyer's breach); Silverman v. Merce (In re Silverman), Nos. 98 B 37764, 98 A 02064, 1999 WL 326328, at *7 (Bankr. N.D. Ill. May 18, 1999) (sales contract provided for payment of escrow to debtor on seller's default); Turner v. Burton (In re Turner), 29 B.R. 628, 630 (Bankr. D. Me. 1983) (sales contract provided for equal distribution of escrow between debtors and real estate agent upon seller's default). The Debtor has no similar right in the present case.

[8] This Order does not address any state law causes of action that the Debtor may pursue in the related adversary proceeding. Throughout these proceedings, the Debtor has put forth arguments that are more indicative of a breach of contract or breach of warranty cause of action. Given that the Debtor can no longer proceed on an action for specific performance premised upon assumption of the Sales Contract under § 365 in light of this Order, I will allow the Debtor the opportunity to amend its complaint in the related adversary proceeding. Determining here that the Funds are not property of the estate does not foreclose possible recovery against the Funds on a purely state law theory of recovery.

AO 72A

(Rev. 8/82)

**CONCLUSION**

The Debtor's chapter 11 plan proposes to assume a contract that cannot be assumed under § 365 and to distribute funds which are not property of the Debtor's estate under § 541. The plan cannot be confirmed because it does not comply with the applicable provisions of the Bankruptcy Code as required by § 1129(a)(1).

It is therefore **ORDERED** that the Objection to Debtor's Plan filed by Georgia Heritage is **SUSTAINED,** and

**FURTHER ORDERED** that the Debtor shall have twenty-one (21) days from the date of this Order to file an amended chapter 11 plan, and

**FURTHER ORDERED** that the Debtor shall have twenty-one (21) days from the date of this Order to file any amendments to its complaint in the related adversary proceeding (No. 09-01015), and

**FURTHER ORDERED** that if the Debtor does not amend its complaint within that time period, the Clerk shall distribute to Georgia Heritage the $175,000—together with accrued interest less the Clerk's registry fees—currently held in the registry of the Court, and

**FURTHER ORDERED** that upon failure to amend the chapter 11 plan in accordance with this Order within the time period, an order will issue dismissing this case due to the Debtor's failure

14

AO 72A
(Rev. 8/82)

to propose a confirmable plan.

_____
JOHN S. DALIS
United States Bankruptcy Judge

Dated at Brunswick, Georgia,
this 27th day of April, 2010.

15